**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| QUINTUS CORPORATION, et al., | ) Case No. 01-00501 through |
| | ) Case No. 01-00503(MFW) |
| Debtors. | ) |
| _____ | ) Jointly Administered |
| | ) |
| QUINTUS CORPORATION, | ) |
| MUSTANG.COM, INC., and | ) |
| ACUITY CORPORATION, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adversary No. 04-53074 |
| | ) |
| AVAYA, INC., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**OPINION**[1]

Before the Court are cross motions for summary judgment in
the above adversary proceeding filed by the chapter 11 Trustee of
the Debtors' estate and by Avaya, Inc., the purchaser of
substantially all the assets of the Debtors.  The Trustee has
also filed a Motion for Sanctions seeking judgment in his favor
as a result of Avaya's destruction of books and records essential
to the Trustee's case.  For the reasons set forth below, the
Court will grant, in part, both motions of the Trustee and will
grant, in part, Avaya's motion for partial summary judgment.

_____

    1 This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

I.    <u>BACKGROUND</u>

On February 22, 2001, Quintus Corporation ("Quintus") and its subsidiaries (collectively the "Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code.  On that same day, the Debtors executed an Asset Purchase Agreement ("APA") with Avaya, Inc. ("Avaya") for the sale of substantially all the Debtors' assets.  In exchange for the Debtors' assets, Avaya agreed to assume certain of the Debtors' liabilities not to exceed $30 million and to pay $30 million in cash at closing.  On April 6, 2001, the Court entered an Order authorizing the sale of the Debtors' assets free and clear of all claims and interests pursuant to the terms of the APA.  The sale closed on April 11, 2001 (the "Closing Date").

Subsequently, on January 30, 2002, Kurt F. Gwynne (the "Trustee") was appointed as the chapter 11 trustee in the jointly administered cases.  On March 18, 2004, the Trustee filed an adversary complaint against Avaya asserting breach of contract and unjust enrichment for failure to pay certain liabilities assumed under the APA.  Avaya filed an answer and affirmative defenses on April 19, 2004.  After discovery, both parties moved for summary judgment.

Avaya seeks dismissal of the adversary complaint.[2]  The
Trustee seeks an order finding that Avaya materially breached the
APA and awarding damages accordingly.  The Trustee seeks that
relief based on the evidence garnered in discovery and on the
fact that Avaya has failed to produce relevant documents
essential to the Trustee's case which were in Avaya's sole
control and which Avaya was obligated to maintain pursuant to the
APA.

The motions have been fully briefed and are ripe for
decision.

II.  <u>JURISDICTION</u>

The Court has jurisdiction over this adversary proceeding
pursuant to 28 U.S.C. §§ 1334(b) & 157(b)(2)(A), (E), (N) & (O).

III. <u>DISCUSSION</u>

A.  <u>Standard for Summary Judgment</u>

Summary judgment is appropriate where "there is no genuine
issue as to any material fact and . . . the moving party is
entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  "In deciding a motion for summary judgment, the judge's

---

2  Avaya previously filed a motion to dismiss one count of
the complaint.  The Court deferred ruling on that motion pending
the completion of discovery.  Because Avaya's motion for summary
judgment raises the same issue, this decision moots the dismissal
motion.

function is . . . to determine if there is a genuine issue for trial." Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once the moving party establishes the absence of a genuine issue of material fact, however, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e).[3] See also Fireman's Ins. Co. of Newark, N.J. v.

---

[3] To rebut a moving party's record, Rule 56(e) requires:

(e) . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

DuFresne, 676 F.2d 965, 969 (3d Cir. 1982); Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972).

In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  Issues of material fact are those "that might affect the outcome of the suit under governing law."  Id. at 248.  An issue is genuine when it is "triable," that is, when reasonable minds could differ on the result.  Matsushita, 475 U.S. at 587.

In this case, the parties have supported their cross motions for summary judgment with references to depositions and documents garnered through discovery, as well as sworn affidavits.  Though at first blush there appears to be a dispute of fact (whether Avaya paid all assumed liabilities), in reality there is not. The identity of the liabilities actually paid by Avaya is not disputed; the Trustee has obtained copies of all the checks issued by Avaya.  The crucial issue in dispute is one of contract interpretation: which liabilities did Avaya assume?

1.  Summary Judgment in Breach of Contract Suit

Summary judgment is proper where contract language is unambiguous and favors the interpretation advanced by the movant. Newport Assocs. Dev. Co. v. Travelers Indemnity Co. of Ill., 162 F.3d 789, 791 (3d Cir. 1998); Tamarind Resorts Assocs. v. Gov't

of the Virgin Islands, 138 F.2d 107, 111 (3d Cir. 1998).
"Contract language is not ambiguous simply because the parties
disagree on its meaning." E.I. Dupont de Nemours & Co. v.
Allstate Ins. Co., 693 A.2d 1059, 1061 (Del. 1997). See also
Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 93
(3d Cir. 2001). "Rather, a contract is ambiguous only when the
provisions in controversy are reasonably or fairly susceptible of
different interpretations." Rhone-Poulenc Basic Chems. Co. v.
Am. Motorists, Inc., 616 A.2d 1192, 1196 (Del. 1992).

Under Delaware law, the starting point for any contractual
interpretation is the plain language of the parties' agreement.[4]
Citadel Holding Corp. v. Roven, 603 A.2d 818, 822 (Del. 1992).
"If a writing is plain and clear on its face . . . the writing
itself is the sole source for gaining an understanding of
intent." City Investing Co. Liquidating Trust v. Cont'l Cas.
Co., 624 A.2d 1191, 1198 (Del. 1993); Klair v. Reese, 531 A.2d
219, 223 (Del. 1987).

Where the meaning and application of the terms of the
contract are uncertain, the trial court may consider testimony
pertaining to antecedent agreements, communications and other
factors which bear upon the proper interpretation of the

---

4  Pursuant to section 10.06, the APA is governed by
Delaware law. (Appendix to Opening Brief of Defendant Avaya,
Inc., in Support of its Motion for Partial Summary Judgment at A
50 (hereinafter referred to as "Appendix").)

contract.  Klair, 531 A.2d at 223.  See also James River-

Pennington, Inc. v. CRSS Capital, Inc., No. 13870, 1995 WL

106554, at *5 (Del. Ch. 1995) (concluding that where contract is

ambiguous, the court is permitted to consider objective,

extrinsic evidence of the intent of the parties in drafting the

operative language).

  2. Sanction for Failure to Produce Documents

  The Trustee also seeks summary judgment as a sanction for

Avaya's failure to produce documents in discovery.  Specifically,

the Trustee argues that Avaya failed to produce the Debtors'

general ledger, sub-ledgers, and vendor files from which the

Trustee could establish what remains unpaid of the liabilities

Avaya assumed.  The Trustee argues that Avaya had a contractual

obligation under section 5.05(a) of the APA to maintain those

records for seven years after the Closing Date, yet destroyed

them within months of Closing.  (Appendix at A 36.)  The Trustee

contends that the destroyed documents are highly relevant to this

litigation because they go to the heart of the dispute: what

liabilities were assumed and what assumed liabilities remain

unpaid.  The Trustee asserts that he is highly prejudiced by the

destruction of the documents, to the extent that the Court does

not agree that he is otherwise entitled to summary judgment on

the legal bases asserted in his motion for partial summary

judgment.  See, e.g., Shamis v. Ambassador Factors Corp., 34 F.

Supp. 2d 879, 889 (S.D.N.Y. 1999) (stating that in determining
the prejudice suffered as a result of destruction of documents,
the court should "examine the materiality and value of the
suppressed evidence upon the ability of [the movant] to fully and
fairly prepare for trial."). As a result, the Trustee argues
that he is entitled to sanctions, including the entry of judgment
in his favor on the complaint. See, e.g., Shepherd v. Am. Broad.
Cos., 62 F.3d 1469, 1479 (D.C. Cir. 1995) (concluding that
judgment is appropriate sanction where destruction of documents
deprives adversary of critical evidence).

Avaya responds that there is no evidence that it
intentionally destroyed these documents to suppress the truth.
The destruction occurred in 2001 or 2002, long before the Trustee
commenced this adversary proceeding (and before the Trustee was
even appointed). Therefore, Avaya asserts that the Court cannot
find  that the destruction of documents was done in anticipation
of litigation - a necessary element to sanction a party for
document destruction. See, e.g., Shamis, 34 F. Supp. 2d at 888-
89 ("A condition precedent to the imposition of sanctions is
whether [the party charged with destruction] knew or should have
known that the destroyed evidence was relevant to pending,
imminent or reasonably foreseeable litigation."). Further, Avaya
argues that it substantially fulfilled its obligation to retain
the records, because it gave copies to the Debtors' financial

8

adviser.  Finally, it asserts that the Trustee is not prejudiced

by the document destruction because all the documents relevant to

the issue before the Court have been produced, namely the Final

Schedule, which Avaya asserts is the definitive list of all

liabilities which it assumed.

To sanction a party who has destroyed evidence, the court

must consider: (1) the degree of fault of the party who altered

or destroyed the evidence; (2) the degree of prejudice suffered

by the opposing party; and (3) what degree of sanction is

necessary to avoid substantial unfairness to the opposing party

and to deter such conduct by others in the future.  Schmid v.

Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994).

The Court finds that in this case, contrary to Avaya's

assertion, the destruction of documents was not unintentional;

rather Avaya deliberately deleted the Debtors' electronic records

in order to give itself more computer space.[5]  The records were

---

[5] Avaya's assertion that it gave hard copies of the
documents to the Debtors' financial adviser is not supported by
the record.  Although the Debtors' former CFO, Mark Thompson,
testified that he boxed his records and left them behind for the
Debtors' advisers, there is no evidence that those records were
all the Debtors' financial records.  (Opening Brief in Support of
Chapter 11 Trustee's Motion for Sanctions for Spoliation of
Evidence, Exhibit D.)  Another former employee of the Debtors and
Avaya, Rosie Nguyen, testified that she sent the Debtors'
financial records to Avaya's archives.  (Id., Exhibit A.)
Further, the Debtors' financial advisers testified that the
records they received were extremely limited.  (Reply Brief in
Support of Chapter 11 Trustee's Motion for Sanctions for
Spoliation of Evidence, Exhibits G & H.)  Even if Avaya had given
some of the records to the Debtors' financial advisers, they
would have had no reason to keep them given Avaya's undertaking

not simply lost or accidentally destroyed.  Cf. Brewer v. Quaker
State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995) (concluding
that the district court did not err in refusing to draw
spoliation inference where there was no evidence that missing
files were intentionally destroyed as opposed to misplaced or
lost).  Avaya's conduct is exacerbated by the fact that at the
time the records were destroyed, Avaya had a contractual duty to
maintain them.  (Appendix at A 36.)

Further, when it destroyed the Debtors' books and records,
Avaya had not paid all the liabilities it had assumed.[6]
Therefore, it should have anticipated litigation over its failure
to comply with the APA.  See, e.g., Silvestri v. General Motors
Corp., 271 F.3d 583, 591 (4th Cir. 2001) (noting that "[t]he duty
to preserve material evidence arises not only during litigation
but also extends to that period before the litigation when a
party reasonably should know that the evidence may be relevant to
anticipated litigation"); Shamis, 34 F. Supp. 2d at 888-89
(inquiry is whether the party destroying documents "knew or
should have known that the destroyed evidence was relevant to
pending, imminent or reasonably foreseeable litigation."); Howell

---

to preserve all the records for a period of seven years.

   [6]  The Trustee asserts that Avaya admitted it owed $500,000
of the assumed liabilities at the time the documents were
destroyed; Avaya disputes this.  It is unnecessary to decide this
dispute, however, because Avaya admits that it still owes in
excess of $300,000 as of today.

v. Maytag, 168 F.R.D. 502, 505 (M.D. Pa. 1996) (holding that a party who has reason to anticipate litigation has an affirmative duty to preserve evidence which might be relevant to the issues in the lawsuit).

Finally, to the extent that the records are necessary for the Court to determine the merits of this suit, the destruction was prejudicial to the Trustee. In that event, there would be a basis for sanctioning Avaya for its failure to maintain the Debtors' financial records. See, e.g., Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc., 133 F.R.D. 166, 170 (D. Co. 1990) (granting default judgment against party which had destroyed evidence essential to plaintiff's case); Wm. T. Thompson Co. v. General Nutrition Corp., 593 F. Supp. 1443, 1456 (C.D. Cal. 1984) (holding that defendant's destruction of relevant records warranted both monetary sanctions and ultimate sanction of default judgment against it); In re Wechsler, 121 F. Supp. 2d 404, 429 (D. Del. 2000) (concluding that owner's intentional destruction of ship, thereby precluding an inspection to determine the cause of a fire aboard, warranted judgment against it). See generally 7 Moore's Federal Practice - Civil § 37.120 (2006).

The determination of the proper sanction, however, depends on the extent of any prejudice suffered by the Trustee. If the Trustee is successful on the legal issues presented in his motion

for partial summary judgment, for example, no prejudice is shown
and no sanction is mandated.  The Court will therefore consider
the appropriate sanction in the context of its decision on the
merits of the cross motions for summary judgment.

    B.   Unjust Enrichment

    Initially, Avaya argues that where there is no dispute that
a valid contract governing the parties' relationship exists,
"recovery under an unjust enrichment claim is precluded as a
matter of law."  Liafail, Inc. v. Learning 2000, Inc.,  Nos. C.A.
01-599 GMS, C.A. 01-678 GMS, 2002 WL 31667861, at *13-14 (D. Del.
Nov. 25, 2002).  In his Complaint, the Trustee alleges that the
APA constitutes a valid, binding agreement between the parties.
(See Complaint at ¶¶ 11, 17-18.)  As it does not dispute this
assertion, Avaya contends that summary judgment in its favor
dismissing the Trustee's unjust enrichment claim is warranted.
Liafail, 2002 WL 31667861, at *13-14.

    The Trustee responds that Delaware law permits a claim for
unjust enrichment where an express contract exists, so long as
the obligations or rights that are the subject of that claim are
not exclusively governed by the contract at issue.  Fitzgerald v.
Cantor, No. C.A. 16297, 1998 WL 326686, at *6 (Del. Ch., June 16,
1998).

    In this case, however, the Trustee has made no effort to
demonstrate that his claims are not exclusively governed by the

APA; nor is any of the destroyed evidence relevant to this issue.
Therefore, because a binding contract exists between the parties
that adequately addresses each party's rights and duties, the
Court concludes that a claim for unjust enrichment is not
available.  <u>Liafail</u>, 2002 WL 31667861, at *13-14.  <u>See also</u>, <u>In
re Crown-Simplimatic, Inc.</u>, 299 B.R. 319, 327 (Bankr. D. Del.
2003) (concluding that "[b]ecause a binding contract exists that
adequately addresses each party's rights and duties, [the
plaintiff] cannot recover under the quasi-contractual theory of
unjust enrichment.").  Therefore, the Court will grant Avaya's
motion for summary judgment, in part, and will dismiss the
Trustee's unjust enrichment claim.

    C.   <u>Breach of Contract</u>

    In this case, the Trustee seeks a judgment against Avaya in
the amount of $1,888,410.52 for unpaid claims allegedly assumed
by Avaya under the APA.  (<u>See</u> Exhibit A to Trustee's Motion for
Partial Summary Judgment; Supplement in Support of Trustee's
Motion for Partial Summary Judgment.)  The Trustee asserts that
Schedule 1.03 of the APA requires that Avaya pay all claims which
arose after the December 31, 2000, Balance Sheet, including the
claims listed on the Debtors' bankruptcy schedules or on proofs
of claim filed by creditors.

    Avaya disagrees.  Avaya asserts that Schedule 1.03 cannot be
read so broadly.  Rather, it argues that the only liabilities

assumed are those which were reflected in the Debtors' books and records as of the Closing Date, except for three subcategories of claims that are not at issue here.

The parties' dispute requires an interpretation of Schedule 1.03 of the APA, which provides:

Schedule 1.03: Assumed Liabilities

1.  All liabilities listed on the Company Balance Sheet (exclusive of the liability listed thereon that is an Excluded Liability pursuant to Section 1.04(v)) and all liabilities accrued or recorded after the Balance Sheet Date in the ordinary course of business consistent with past practice to the extent not satisfied prior to the Closing Date, provided that the aggregate amount of liabilities assumed pursuant to this paragraph shall not exceed $30,000,000, and provided further that in no event shall Buyer assume liabilities for any advisers to any Seller in connection with the Chapter 11 Case or any Existing Claims in excess of an aggregate of $1,000,000. In addition, Buyer shall assume each of the liabilities and obligations set forth in clauses a - c below, and such liabilities shall count against the $30,000,000 limitation in the foregoing sentence to the extent such liabilities are or should be accrued or recorded on the Company balance sheet based on GAAP applied on a consistent basis and have not been satisfied at the Closing.

(Appendix at A 10-11 (emphasis added).)

1.  Meaning of "Accrued"

a.  Plain Meaning

The Trustee argues that under the plain language of Schedule 1.03, Avaya is liable for any and all liabilities incurred by the Debtors after the Balance Sheet Date (December 31, 2000) that were not paid prior to the Closing Date (April 11, 2001).

Specifically, he argues that "accrued" and "incurred" are interchangeable.

Avaya argues, in contrast, that "accrued" means a liability that has been recorded on the Debtors' books and records. Avaya contends, therefore, that the only liabilities it assumed are those listed on the Debtors' books and records, which are reflected on the Final Schedule submitted to Avaya at the Closing. Avaya's argument is premised on the meaning of "accrual" in financial parlance, which describes liabilities that are reflected by an actual entry in financial books of account. Under accounting literature, liabilities should be recorded once an invoice is received. Even before an invoice is received, however, some liabilities should be reflected on a company's books (i.e., accrued) based on reliable estimates.[7] Therefore, Avaya asserts that "accrued or recorded" in Schedule 1.03 referred to liabilities that were somewhere reflected in the

---

[7]    The Financial Accounting Standards Board ("FASB") Statement of Financial Accounting Concepts No. 6 provides that "[a]ccrual is concerned with expected future cash receipts and payments: it is the accounting process of recognizing assets or liabilities and the related liabilities, assets, revenues, expenses, gains, or losses for amounts expected to be received or paid, usually in cash, in the future." FASB's Statement of Financial Accounting Standards No. 5 notes that an "estimated loss from a contingency . . . shall be accrued by a charge to income" if it is probable the loss will be incurred and it "can be reasonably estimated." AICPA Accounting Research Bulletin No. 43 states that the "concept of current liabilities would include estimated or accrued amounts which are expected to be required to cover expenditures within the year for known obligations" whose precise amount or payee is yet unknown.

Debtors' books and records by an accounting entry.

The Trustee argues in response that "accrued" is interchangeable with "incurred."  As support, the Trustee cites to an earlier edition of Black's Law Dictionary, which defined the word "accrue" as meaning, among other things, "was incurred." Black's Law Dictionary 20-21 (6th ed. 1990).

The Court finds this argument of the Trustee unpersuasive. Neither the 7th edition (published in 1999 and therefore the version in existence at the time the APA was drafted), nor the current 8th edition (published in 2004) provide that "accrue" is interchangeable with "incur."  See Black's Law Dictionary 21 (7th ed. 1999); Black's Law Dictionary 22 (8th ed. 2004).

The Trustee further argues that if Avaya's interpretation that "accrued" means "recorded on the Debtors' books and records" was correct, the term "or recorded" found after it in Schedule 1.03 would be wholly unnecessary.  Avaya's argument in essence is that "accrued or recorded" means "accrued and recorded" in the Debtors' books and records prior to the Closing Date.  The Trustee asserts that Avaya's interpretation is incorrect because it would make part of the language of Schedule 1.03 meaningless surplusage.

Avaya similarly argues that if the Trustee's interpretation were correct, then much of the sentence would be surplusage.  If the parties had intended Avaya to assume all liabilities of the

Debtors arising after the Balance Sheet Date (as the Trustee contends), the provision would have said so more directly by stating simply that "Avaya assumes all liabilities of the Debtors to a maximum of $30,000,000."

In interpreting a contract, the Court should strive to avoid an interpretation where any provision is rendered meaningless or mere surplusage.  See, e.g., Rag Am. Coal Co. v. AEI Res., Inc., No. CIV. A. 16728, 1999 WL 1261376, at *5 (Del. Ch. Dec. 7, 1999) (citing Sonitrol Holding Co. v. Marceau Invetissements, 607 A.2d 1177, 1183 (Del. 1992)).  In this case, however, both parties' interpretation would render some of the language of Schedule 1.03 mere surplusage.  The Court is unable to determine, from a plain reading of the provision, which interpretation is correct. Therefore, the Court must refer to other evidence to determine the parties' intent.  See, e.g., Eagle Indus., Inc. v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1232-33 (Del. 1997) (concluding that if there is any ambiguity in the meaning of a contract, the court may consider parol evidence of the parties' intended meaning).

### b.    Prior Negotiations

Avaya argues that the evidence shows that during the negotiations of Schedule 1.03, the Debtors' counsel twice proposed language that would have required Avaya to assume liabilities that were not reflected in the Debtors' books as of

the Closing Date, but Avaya steadfastly refused to accept that language.  First, the Debtors proposed language for Section 1.03 that would have made Avaya responsible for "all liabilities [of Debtors] arising after" December 31, 2000, subject only to the $30 million limitation.  (See Appendix at A 64.)  Avaya rejected this proposal.  Avaya contends that the Debtors made a second proposal, which would have made Avaya accountable for all liabilities "incurred after" December 31, 2000, which Avaya rejected as well.

The Trustee argues in response that during negotiations Avaya tried to get a more particularized definition of assumed liabilities that would specifically identify by name and amount each and every liability to be assumed by Avaya under the APA. (Opening Brief in Support of Chapter 11 Trustee's Motion for Partial Summary Judgment, Exhibit B at ¶ 4.)  This was rejected by the Debtors who agreed only to limit liabilities to $30 million.  (Id.)  Avaya also tried to have attached to the Sale Order, a list of all assumed liabilities by payee and amount. (Id. at ¶ 5 & Exhibit C.)  The Debtors again rejected this suggestion.  (Id., Exhibits D & E at 115.)  As a result, Schedule 1.03 only provides categories of assumed liabilities and does not contain or refer to a fixed list of specific assumed liabilities.

The Trustee further cites an email exchange between the parties as support for his conclusion that the parties intended that all "incurred" debts were assumed.  Counsel for the Debtors, in arguing against having a specific listing of claims, stated: "If, as one of your earlier e-mails suggests, the schedule was more specific it would necessarily exclude liabilities that I understood would be assumed, e.g., incurred but not invoiced debts." (Id., Exhibit D.)  In response, counsel for Avaya states in part: "[w]e certainly are free to list the incurred but not invoiced debts . . . . " (Id., Exhibit F.)  Also, in negotiating the Sale Order, the Trustee asserts that Avaya's counsel agreed that Schedule 1.03 encompasses liabilities which were "incurred" pre-closing.  (Id.)

The Court is more persuaded by the evidence presented by Avaya.  The Trustee's references are often to statements made after the APA was executed and, therefore, were not incorporated into the APA.  In contrast, the Court finds that the parties' express rejection of a version of Schedule 1.03 which would have obligated Avaya to assume all "incurred" obligations of the Debtors is persuasive evidence that the parties intended "accrued" to mean something other than "incurred."  Therefore, the Court is persuaded that the parties intended the term "accrued" to have its financial meaning, that is, an obligation which must be estimated on the Debtors' books and records for

purposes of accounting.  This is bolstered by the testimony of the Debtors' former accounting personnel who stated that in the ordinary course of the Debtors' business, they made a journal or other book entry for accrued expenses.  This is further confirmed by the schedule that was presented by the Debtors to Avaya on April 20, 2001 (the "Final Schedule").  (Appendix at A 186-88.) The Final Schedule had several categories of obligations which Avaya assumed, including "Trade AP", "Other Accounts Payable", and "Accrued Liabilities."  Mark Thompson, the former Vice President of Finance of the Debtors, testified that the detail supporting those categories of assumed liabilities all came from the Debtors' books and records.  Therefore, the Court concludes that Avaya assumed only obligations that were reflected in the Debtors' books and records.

The parties still disagree, however, about what liabilities were reflected on the Debtors' books and records and, therefore, were assumed by Avaya.  It is here where the destroyed documents become crucial.

2.  <u>Final Schedule</u>

Avaya asserts that the liabilities it assumed are those definitively listed on the Final Schedule.  (Appendix at A 186-88, 292-95.)  The Final Schedule was prepared by Thompson.  (<u>Id.</u> at A 285, 292-95.)  The cover memo enclosing the Final Schedule notes that pursuant to the parties' agreement the Final Schedule

was submitted "in lieu of" the estimate of assumed liabilities
required by Schedule 1.03.  (<u>Id.</u> at A 186.)  Thompson testified
that the Final Schedule represents the total amount of
liabilities ($22,549,000) which were reflected on the Debtors'
books and records as of April 20, 2001.  (<u>Id.</u> at A 283-96, 187.)
As the Final Schedule reflects the total amounts "accrued or
recorded" as of April 20, 2001, Avaya contends that it represents
all the liabilities assumed by it under the APA.

    The Trustee argues, however, that the Final Schedule is not
conclusive evidence of the identity or amount of assumed
liabilities.  Under the APA, the Debtors were supposed to provide
Avaya, within three business days of the Closing Date, an
estimate of what the assumed liabilities would be as of that
date.[8]  (<u>Id.</u> at A 10-11.)  This schedule was to be the basis for

_____

    8  Section 1.03 provides in this regard:

        No more than 3 business days prior to the Closing
    Date, Company shall deliver to Buyer a schedule in
    reasonable detail showing Company's estimate of the
    Assumed Liabilities as of the Closing Date.  Buyer
    shall have the right, to review this schedule of
    Assumed Liabilities, and the parties agree to discuss
    in good faith any comments or questions that Buyer may
    have with respect to such schedule.  From and after the
    Closing, Buyer shall have the right to confirm the
    accuracy of the schedule for a period of 5 business
    days after the Closing.  If, based on such review,
    Buyer believes that the Assumed Liabilities as of the
    Closing Date exceeds $30,000,000, the parties agree to
    discuss in good faith Buyer's comments, and any
    disputes that the parties cannot resolve within 2
    business days will be resolved expeditiously before the
    Bankruptcy Court.  If the Assumed Liabilities as of the
    Closing Date, as reflected on the schedule prepared by

Avaya to determine whether the assumed liabilities exceeded $30 million.  The Trustee argues that the Final Schedule merely provides an estimate and not the total Liabilities that Avaya agreed to assume under the APA.  In support of his position, the Trustee notes that the cover letter states that the Final Schedule is "a schedule of the Company's estimate of the Assumed Liabilities."  In fact, the word "estimate" is used six times throughout the document.  (Id. at A 186-88.)

In response to the Trustee's argument, Avaya asserts that the use of the word "estimate" in the Final Schedule and cover letter is consistent with Avaya's interpretation of Schedule 1.03.  Because "accrued" liabilities must be recorded prior to the receipt of a final bill or invoice, they are of necessity estimates.  (Id. at A 280 ("that's the point of accruals . . . estimating what your liabilities are").)  Additionally, Avaya noted that the Debtors did, in fact, submit the estimated schedule to Avaya on April 5, 2001, and that the Final Schedule was submitted on April 20, 2001, and reflects the amount of assumed liabilities agreed upon by the parties after the Closing Date.  (Id. at A 183-88.)  Avaya notes that the April 5, 2001, schedule was marked "ESTIMATE" while the April 20, 2001, schedule

---

Company or as revised upon resolution of any comments
by Buyer, exceed $30,000,000, then the provisions of
Section 5.14 shall apply.

(Appendix at A 11.)

was plainly marked "FINAL."  (Id.)

The Court agrees with the Trustee that the Final Schedule does not represent a final and exclusive list of liabilities assumed by Avaya.  Rather, the Final Schedule provides only a broad categorical description of the types of liabilities to be assumed and an estimate of the amount owed in each of those categories; it does not include a specific listing of liabilities to be assumed, particularly with respect to the accrued liabilities.[9]  The Final Schedule bears no hallmarks of finality.  It uses "estimate" six times, reflects dollar figures rounded to the nearest thousand and makes almost no reference to specific creditors.  Therefore, the Court concludes that the Final Schedule was not a conclusive list of the liabilities assumed by Avaya.[10]  The Court concludes instead that the liabilities assumed by Avaya are the actual liabilities that were reflected on the Debtor's books and records.

---

[9]  The trade payables ($7,080,000) were included as a line item and detailed in an attached Aged Payables Report dated that same date.  (Id. at A 187, 189-247, 301.)  The Final Schedule also included "Accrued Liabilities" as a line item ($5,513,000) and attached a one page list of the categories of accrued liabilities.  (Id. at A 186-88.)  The remainder of the assumed liabilities (in excess of $8 million) were in the deferred revenues category, which represented prepayment by customers for services which Avaya became obligated to provide after the Closing Date.

[10]  This is confirmed by the fact that the Avaya employees did not actually use the Final Schedule in paying the assumed liabilities.  (Appendix at A 296.)

3.    Bankruptcy Schedules

The Trustee argues that the Debtors' bankruptcy schedules reflect liabilities assumed by Avaya. He notes that the Debtors' bankruptcy schedules were executed by Thompson on April 10, 2001, only one day prior to the Closing Date. Thompson confirmed that the bankruptcy schedules reflect the Debtors' liabilities as they were shown in the Debtors' books and records. (Opening Brief, Exhibit G at 146-47.) Consequently, the Trustee asserts that the debts listed on the bankruptcy schedules are assumed liabilities under the APA. The Trustee has compared the liabilities listed on the bankruptcy schedules with the evidence he obtained in discovery of Avaya's payment of claims and contends that at least $429,786.49 in trade claims and $302,134.97 in scheduled tax claims were never paid by Avaya. (Reply Brief in Support of Chapter 11 Trustee's Motion for Partial Summary Judgment, Exhibit D at ¶¶ 9, 11-12; Supplement in Support of Chapter 11 Trustee's Motion for Partial Summary Judgment, Exhibit B at ¶¶ 12-13, 16.) Thus, the Trustee asserts that Avaya owes $731,921.46 in scheduled (and therefore assumed) liabilities.

Avaya disagrees, asserting that the bankruptcy schedules are irrelevant. It asserts that they are not the books and records kept by the Debtors in the ordinary course of business and that Schedule 1.03 did not provide for the assumption of all liabilities listed on the bankruptcy schedules.

The Court rejects Avaya's arguments.  The Debtors' bankruptcy schedules reflect liabilities that were on the Debtors' books and records as of the date of the filing of the schedules.  (Opening Brief, Exhibit G at 146-47.)  Because Avaya assumed all liabilities accrued or recorded on the Debtors' books and records, it is responsible for the claims listed on the Debtors' schedules.  Avaya has presented no evidence to refute the Trustee's proof that $752,696.76 in scheduled (and therefore assumed) liabilities have not been paid by it.[11]  Based on the evidence presented by the parties, judgment in the Trustee's favor in this amount is warranted.

4.  <u>Proofs of Claim</u>

The Trustee argues that Avaya assumed the liabilities that are reflected on the claims register in this case.  He contends that a debt is "recorded" on the Debtors' books and records when a proof of claim is filed and the obligation is listed in the claims register, because the claims register was the Debtors' only remaining means of recording an obligation once their books and records were transferred to Avaya on the Closing Date.

Avaya disagrees and reiterates its argument that the assumed liabilities were only those which were actually reflected by accrual or recording on the Debtors' books and records and that

_____

11  In fact, Avaya has conceded that it owes a portion of these claims.  Specifically, Avaya admits $202,165.46 in trade payables and $321,383.83 in tax liabilities remain unpaid obligations which it assumed under the APA.

the claims register is not part of the Debtors' books and records.  It further argues that the book entry must have been made before the Closing Date according to the language of Schedule 1.03.  The Trustee responds that the language "prior to the Closing" contained in Schedule 1.03 modifies only the phrase immediately preceding it: "to the extent not satisfied."  The Trustee argues, therefore, that any debt recorded or accrued on the Debtors' books and records in the ordinary course of business at any time, even after the Closing Date, was assumed by Avaya.

The Court agrees with the Trustee's interpretation of the contract.  There is nothing to suggest that "prior to the Closing Date" modifies the entire sentence rather than simply the clause immediately before it.  Thus, Schedule 1.03 eliminated liabilities from assumption if they were paid before the Closing Date.  Avaya's argument that the assumed liabilities only included those which were recorded before the Closing Date is contradicted by the activities of the Debtors' employees hired by Avaya who continued to process invoices they received in the ordinary course of business post-Closing.  The Court, however, disagrees with the Trustee's contention that the filing of a proof of claim was a "recording" in the Debtors' books and records done "in the ordinary course of business consistent with past practice" as required by Schedule 1.03.

The Trustee asserts nonetheless that Avaya has admitted its liability for filed proofs of claim.  He relies on an email sent by Janet Poriadjian, an Avaya employee responsible for setting the account policy for and defining the scope of assumed liabilities under Schedule 1.03, which he quotes as stating:

> . . . please keep in mind that we purchased "certain assets and liabilities" and not the Quintus Corporation.  We have no obligation to pay the vendors that may think that they have an economical right to be paid by Avaya, because they may not, <u>unless the vendor filed a claim through the original bankruptcy courts and/or we've agreed to assume their particular liability</u>.  All vendors that are not on our originally assumed list of liabilities shall pursue their 'right' to get paid by filing a claim to the bankruptcy courts . . . wherever Quintus filed for bankruptcy.

(Opening Brief, Exhibit I (emphasis added).)

Avaya contends that the Trustee grossly distorts Ms. Poriadjian's email.  Reproduced more fully, the email states:

> Also, for Mark's benefit, please keep in mind that we purchased "certain assets and liabilities" and not the Quintus Corporation.  We have no obligation to pay the vendors that may think they have an economical right to be paid by Avaya, because they may not, unless the vendor filed a claim through the original bankruptcy courts and/or we've agreed to assume their particular liability.
> All vendors that are not on our originally assumed list of liabilities, should pursue their 'right' to get paid by filing a claim to the bankruptcy courts in Dublin (or wherever Quintus filed for bankruptcy).
> If there is a vendor that comes to us with a claim . . . we should look to the original liability balance that we assumed (i.e. the $22M liability list).  <u>If they are not on that list, legally we owe them nothing.</u>

(<u>Id.</u> (emphasis added).)

The Court agrees with Avaya that the Poriadjian email is not an admission by Avaya that it owes the claims evidenced by proofs of claim.  Therefore, the Court concludes that the claims listed on the claims register, to the extent they were not otherwise recorded in the Debtors' bankruptcy schedules or books and records, were not assumed by Avaya.

     5.  <u>Books and Records</u>

This, of course, leads back to the question of what was reflected on the Debtors' books and records as liabilities assumed by Avaya.  The former employees of the Debtors who were hired by Avaya to handle the payment of the assumed liabilities testified that the Debtors' books and records consisted of a general ledger, accounts payable ledger and other sub-ledgers, including tax sub-ledgers.  In addition, they testified that when the Debtors received invoices, whose amount the Debtors disputed, the Debtors would reflect that reduction on the face of the invoice and only the amount the Debtors believed was due would be recorded in the accounts payable ledger.  They also testified that the Debtors' books and records (both hard copies and electronic versions) were transferred to Avaya on the Closing Date.  Thereafter, those documents were regularly archived by Avaya.

After commencement of this action, the Trustee sought the Debtors' books and records that were relevant to his Complaint.

When Avaya failed to produce them, the Trustee filed a motion to compel their production which was granted, in part, by Order dated October 14, 2005.  Avaya still did not provide all the relevant documents; namely, Avaya has not provided copies of the Debtors' entire general ledger from the Closing Date, the applicable tax sub-ledgers, and the vendor files.

After discovery was completed, however, Avaya did produce some of the Debtors' books and records, arguing that they support its assertion that it paid all the obligations it assumed.  (See Amended Sur-reply Brief of Defendant Avaya, Inc., in Opposition to the Motion for Sanctions for Spoliation of Evidence of the Chapter 11 Trustee, Exhibits 2-4, 10.)  The fact that Avaya did produce a portion of the Debtors' general ledger and tax sub-ledgers after the conclusion of discovery does not help its cause.  A party cannot selectively preserve "relevant" documents and only present those that it finds favorable to its case, at a time when it finds it convenient.  See, e.g., Shamis, 34 F. Supp. 2d at 890 (concluding that the plaintiff's assertion that he kept and produced all the relevant documents while allowing the destruction of 3,000 boxes of documents was unavailing because "a determination of what is and is not relevant varies substantially based on the parties' different theories of the case.").

Rule 37 of the Federal Rules of Civil Procedure expressly provides the Court the power to sanction a party for failure to

comply with a discovery order.  Fed. R. Civ. P. 37.  Sanctions
available under that Rule include striking pleadings, making
inferences, granting attorneys' fees, and other appropriate
actions.  Id.

In addition, the Court's inherent power to oversee
litigation before it, gives the Court the authority to sanction
Avaya for its failure to produce documents relevant to this case.
See, e.g., Silvestri, 271 F.3d at 590 ("The right to impose
sanctions for spoliation arises from a court's inherent power to
control the judicial process and litigation . . . ."); Shepherd,
62 F.3d at 1479 ("As old as the judiciary itself, the inherent
power enables courts to protect their institutional integrity and
to guard against abuses of the judicial process with contempt
citations, fines, awards of attorneys' fees, and such other
orders and sanctions as they find necessary, including even
dismissals and default judgments.").

Appropriate sanctions include (1) an inference that the
evidence would have been unfavorable to the party that destroyed
it, (2) the preclusion of any evidence to contradict the missing
evidence, and (3) the entry of judgment in favor of the other
party.  Schmid, 13 F.3d at 79 (citations omitted); Howell, 168
F.R.D. at 505.

As noted above in Part III.A.2, the Court has concluded that
Avaya intentionally destroyed evidence after it should reasonably

have anticipated litigation about its failure to pay all assumed liabilities.  In this case, Avaya did timely produce the accounts payable ledger which was attached to the Final Schedule and which it asserts reflects all the trade payables it assumed.  The accrued liabilities, including the tax claims, are more problematic.  Only a one page summary of accrued liabilities was attached to the Final Schedule.  (Appendix at A 188.)  Avaya did not produce all the Debtors' books and records relevant to those claims, namely the general ledger, tax sub-ledgers or the vendor files, which would permit the Trustee or the Court to determine what accrued claims were reflected on the Debtors' books and records at the Closing Date and remain unpaid.

Avaya asserts that those documents are not essential to the Trustee's claim because the Final Schedule shows what the Debtors' books and records contained at that time.  However, without the Debtors' books and records, this thesis cannot be tested.  <u>Shamis</u>, 34 F. Supp. 2d at 890.  Avaya further asserts that the vendor files are irrelevant because the invoices would only reveal a number higher than the Debtors actually recorded in their books and records.  Avaya asserts that it assumed only the amount of the claim reflected in the Debtors' books and records and not the amount that the vendor asserts is due.

The Court disagrees.  Avaya assumed certain liabilities, both accrued and recorded in the Debtors' books and records.

Nguyen testified that the Debtors made notations on the face of the vendors' invoices.  (Reply Brief in Support of Chapter 11 Trustee's Motion for Summary Judgment, Exhibit G.)  Therefore, the Court concludes that those invoices were part of the Debtors' books and records.  Furthermore, to the extent that the amount actually due to a creditor whose claim was accrued or recorded on the Debtors' books and records exceeds the amount the Debtors listed on their general ledger, the Court concludes that Avaya owes the correct amount.  The Final Schedule made this clear; it repeatedly referred to the amounts listed as estimates, although Avaya's liability was ultimately capped at $30 million.

Therefore, the Court concludes that all the Debtors' books and records, including the vendor files, general ledger and sub-ledgers, are relevant to the Trustee's claims and should have been preserved and produced in discovery.  The destroyed evidence is not simply relevant to this case but goes to the heart of the Trustee's suit: what claims were assumed by Avaya that remain unpaid.  Further, Avaya did not merely alter the evidence, it destroyed it.  Consequently, the Court concludes that the most severe sanction of judgment against Avaya is warranted.  See, e.g., Computer Assocs., 133 F.R.D. at 170 ("Destroying the best evidence relating to the core issue in the case inflicts the ultimate prejudice upon the opposing party.  I find and conclude that no alternate sanction short of a default judgment would

adequately punish [the defendant] and deter future like-minded litigants."); <u>Thompson</u>, 593 F. Supp. at 1456 (holding that default judgment was appropriate where "destruction of documents and records . . . deprived [opposing party] of the opportunity to present critical evidence on its key claims to the jury.").

Even if the Court did not find that the most severe sanction was warranted by Avaya's conduct, the result would be the same. If the Court applied the spoliation inference and inferred that the destroyed (or withheld) documents would be unfavorable to Avaya's position, it must conclude that the Debtors' books and records would include the claims of those creditors who have filed proofs of claim. Similarly, if the Court were to preclude Avaya from presenting any evidence that the Debtors' books and records did not include those claims or included them in lesser amounts, the Court would have to conclude that the Debtors' books and records were consistent with the creditors' records as reflected in their proofs of claim. Thus, entry of judgment in favor of the Trustee is nothing more than what would result from the other available sanctions.[12]

---

[12] Avaya asserts that the Trustee has only a breach of contract claim for its failure to preserve the Debtors' books and records. Even if that were so, the damages suffered by the Trustee for that breach would include the amount he could not prove that Avaya owes because of the destruction of the records by Avaya. Therefore, the result would still be the same: judgment in favor of the Trustee.

As a result, the Court concludes that judgment should be entered in favor of the Trustee for all claims listed in the Debtors' bankruptcy schedules and on the claims register which the Trustee contends is $1,888,410.52.[13]

D.   Attorneys' Fees

The Trustee also seeks attorneys' fees as a sanction for Avaya's failure to produce the Debtors' books and records.  Such a sanction is available under Rule 37.  Fed. R. Civ. P. 37. Because the Court is granting a more severe sanction, judgment in the Trustee's favor, the Court will not award attorneys' fees as an additional sanction.


IV.  CONCLUSION

For the foregoing reasons, the Court will grant, in part, Avaya's Motion for Summary Judgment and dismiss the Trustee's Unjust Enrichment count of the Compliant.  The Court will also grant, in part, the Trustee's Motions for Partial Summary

---

13  One of the claims is a $228,564 rejection damages claim assumed by Avaya as the result of a letter agreement executed on April 11, 2001.  (See Supplement at Exhibit A.)  While Avaya admits it owes that claim, it asserts that it is not the proper subject of the Trustee's summary judgment motion which is based only on Schedule 1.03 of the APA.  The Court rejects this argument as elevating form over substance.  The letter agreement was executed on the Closing Date and appears to clarify obligations of Avaya under the APA; the Trustee's Complaint seeks to recover sums due by Avaya under the APA.  The Court will not require the Trustee to incur the additional expense of prosecuting another complaint to collect an obligation that Avaya admits it owes.

Judgment and for Sanctions.

An appropriate Order is attached.


Dated: October 27, 2006                    BY THE COURT:


                                           Mary F. Walrath
                                           United States Bankruptcy Judge