**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | |
| QUINTUS CORPORATION, et al., ) | Case No. 01-00501 through |
| ) | Case No. 01-00503(MFW) |
| Debtors. ) | |
| _____ ) | Jointly Administered |
| ) | |
| QUINTUS CORPORATION, ) | |
| MUSTANG.COM, INC., and ) | |
| ACUITY CORPORATION, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adversary No. 04-53074 |
| ) | |
| AVAYA, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**OPINION**[1]

This matter is before the Court on remand from the District Court of an appeal of the Court's decision dated October 27, 2006 (the "October 27 Decision"), which granted judgment in favor of the Plaintiffs against Avaya, Inc. ("Avaya") in the amount of $1,888,410.52. After consideration of additional evidence and the arguments of the parties, the Court will enter judgment in favor of the Plaintiffs against Avaya in the amount of $1,535,979.57.

---

1 This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

I.   BACKGROUND

The factual background of this case is described in the October 27 Decision and will be repeated here only briefly. On February 22, 2001, Quintus Corporation ("Quintus") and its subsidiaries (collectively the "Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code. On that same day, the Debtors executed an Asset Purchase Agreement ("APA") with Avaya for the sale of substantially all the Debtors' assets. In exchange for the Debtors' assets, Avaya agreed to assume certain of the Debtors' liabilities not to exceed $30 million and to pay $30 million in cash at closing. The sale was approved by the Court on April 6, 2001, and the sale closed on April 11, 2001 (the "Closing Date").

Subsequently, on January 30, 2002, Kurt F. Gwynne (the "Trustee") was appointed as the chapter 11 trustee in the Debtors' jointly administered cases. On March 18, 2004, the Trustee filed an adversary complaint against Avaya asserting breach of contract and unjust enrichment for failure to pay certain liabilities assumed under the APA. Avaya filed an answer and affirmative defenses on April 19, 2004. After discovery, both parties moved for summary judgment.

Avaya sought dismissal of the adversary complaint and the Trustee sought a judgment against Avaya for its material breach of the APA based on the evidence garnered in discovery and on the fact that Avaya had failed to produce relevant documents essential to the Trustee's case which were in Avaya's sole control and which Avaya was obligated to maintain pursuant to the APA.

The Court granted the Trustee's motion for summary judgment, finding that under section 1.03 of the APA, Avaya had assumed and agreed to pay all obligations that were reflected in the Debtors' books and records which arose after the December 31, 2000, Balance Sheet.  Quintus Corp. v. Avaya, Inc. (In re Quintus Corp.), 353 B.R. 77, 82-84 (Bankr. D. Del. 2006).  The Court found, however, that Avaya had destroyed the Debtors' books and records, despite having a contractual obligation to maintain them after the Closing Date.  Id.  Because that destruction made it difficult to determine what debts were listed on the books and records and assumed by Avaya, the Court entered judgment against Avaya as a sanction for its spoliation of evidence.  Id. at 84, citing Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) ("The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation . . . ."); Shepherd v. Am. Broad. Cos., Inc., 62 F.3d

1469, 1479 (D.C. Cir. 1995) ("As old as the judiciary itself, the inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments."); Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc., 133 F.R.D. 166, 170 (D. Colo. 1990) ("Destroying the best evidence relating to the core issue in the case inflicts the ultimate prejudice upon the opposing party.  I find and conclude that no alternate sanction short of a default judgment would adequately punish [the defendant] and deter future like-minded litigants."); Wm. T. Thompson Co. v. General Nutrition Corp., 593 F. Supp. 1443, 1456 (C.D. Cal. 1984) (holding that default judgment was appropriate where "destruction of documents and records . . . deprived [opposing party] of the opportunity to present critical evidence on its key claims to the jury.").  Judgment in the amount of $1,888,410.52 was entered in favor of the Trustee, which included liabilities listed on the Debtors' bankruptcy schedules filed a day before the Closing Date and claims filed by creditors in the bankruptcy case.  Id. at 94.

 The District Court found "no error in the bankruptcy court's entry of judgment against Avaya as a sanction for spoliation" of the evidence.  In re Quintus Corp., Civ. No. 06-769-SLR, 2007 WL

4233665, at *3 (D. Del. Nov. 29, 2007).  The District Court was concerned, however, with the inclusion in the judgment of claims filed by creditors which had not been "tested against what records do exist or against a common sense approach to the claims process."  Id.  The District Court was unsure "whether the claims register (rejected at the outset by the bankruptcy court as an inappropriate reflection of the Debtors' books and records) will dictate what claims are paid and in what amounts for those claims not otherwise reflected in the Debtors' records, or whether the bankruptcy court is giving the Trustee close to a million dollars to use at his discretion."  Id.

On remand, the Court conducted hearings on February 12 and April 15, 2008.  The Court permitted Avaya to file a pleading outlining the claims to which it objected, which was filed on May 6, 2008.  The Trustee filed a response on May 23, 2008, and Avaya filed its reply on June 4, 2008.  The matter is ripe for decision.

II.  JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b).  This proceeding is core pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (N) & (O).

III. <u>DISCUSSION</u>

    A.   <u>Clarification</u>

The District Court's concern about the Court's use of the claims docket as a measure of the Trustee's damages is unfounded. The Court did reject the Trustee's argument that the claims docket could be characterized as the Debtors' books and records under the language of the APA. 353 B.R. at 90-91. When the Court determined that Avaya should be sanctioned for destroying the Debtors' books and records, however, the Court found that the claims docket could be used as an appropriate measure of the Trustee's damages. The claims docket reflects all proofs of claim filed by pre-petition (and therefore pre-Closing Date) creditors. Although the proofs of claim may differ from the Debtors' books and records, a properly filed proof of claim is prima facie evidence of the validity and amount of that claim. Fed. R. Bankr. P. 3001(1)(f). Therefore, in the absence of an objection to that claim and proof that the claim is invalid, the proof of claim must be allowed and is entitled to be paid.

    B.   <u>Further Evidentiary Hearings</u>

At the initial remand hearing held on February 12, the Trustee reported what he had done to review the filed proofs of claim and determine their validity. The Trustee stated that he

had objected to claims to the extent he had evidence to dispute them (but without the Debtors' full books and records this was difficult).  Several claims were also reduced by agreement.  As of the February 12 hearing, the Trustee had resolved and paid claims totaling $1,324,287.77.  There remained three claims in dispute.

The hearing was continued to April 15, 2008, to allow those claims to be resolved.  In addition, the Court permitted Avaya to review all the proofs of claim that had been filed and to advise the Court of any claims to which it had an objection.

At the continued hearing, the Trustee presented as Exhibit T-1 a list of all the creditors' claims which he asserts should be included in the judgment.  At the hearing, Avaya objected to only four claims on that exhibit.  One of those claims, Broadwing/Argo Partners, had already been disallowed by the Court so the Trustee agreed it should not be included in the judgment.  One claim was de minimis (the claim of Nortel Networks, Inc., for $166) and the Trustee, therefore, conceded that it need not be included in the judgment.  The third claim (Level III Services, Inc.) had been scheduled at one cent less than the proof of claim and, therefore, Avaya conceded it could be included in the judgment.  The amended judgment the trustee seeks is $1,535,979.57, which reflects the above reductions as well as the

reduction or disallowance of certain other claims.

The final claim to which Avaya objected was an AMEX claim which it asserted was the obligation of the employees who used the card and not the Debtors.  Because Avaya had agreed to pay certain employees' obligations, however, the Court allowed the Trustee time to present evidence to establish that the AMEX claim was for employees' business expenses.  To preserve the record, the Court also permitted Avaya to file a formal objection to the claims at issue and allowed the Trustee to respond to that objection.  Avaya filed its objection on May 6, 2008, in which it objected to six tax claims in addition to the AMEX claim.

In response, the Trustee filed a motion to strike Avaya's objection to the tax claims because Avaya had not objected to them by the deadline the Court had originally set.  He also responded to the substance of Avaya's objections.

    C.   <u>Motion to Strike</u>

The Trustee argues that Avaya's objections to inclusion of claims in the amended judgment are tardy and should be stricken by the Court.  The Trustee notes that the February 12 hearing was continued to give Avaya an opportunity to review the proofs of claim and to advise the Court and the Trustee which claims it felt were improperly included in the judgment.  The Court

directed Avaya to file any such objection by April 1 (two weeks before the continued hearing). This gave Avaya seven weeks to review the claims and voice its objection. Avaya only objected to four claims; three of which were resolved between Avaya and the Trustee. At the April 15 hearing, the only remaining claim to which Avaya objected was the AMEX claim. The Court granted the parties additional time to confer on whether the AMEX claim should be included. Instead, Avaya filed an objection to an additional six claims. The Trustee asserts that this is improper and the Court should not consider Avaya's objection to those claims.

Avaya replies that at the April 15 hearing, it requested and obtained permission to file additional objections to the claims listed on T-1. Avaya stated at that time that it would be filing objections to some claims to preserve the record.

The Court agrees with Avaya that it was given permission to object to several claims, not just the AMEX claim. (Tr. 4/15/08 at 12:12-21, 14:6-17, 15:3-6.) Further, the Court finds that the Trustee has not been unduly prejudiced by Avaya's objections, because he has been able to submit a response addressing each of those claims. Therefore, the Court will consider the substance of Avaya's objections and the Trustee's response.

D. **Substance of Objections to Claims**

1. **Claim No. 116 by Ohio**

The Trustee seeks $200,000 to pay the claim of the Tax Commissioner of the State of Ohio which originally sought $519,784.49 for use taxes. Avaya asserts that there is nothing on the claim itself to prove that the Debtors got notice of the tax liability before the Closing Date. Further, Avaya notes that the Debtors disputed this claim, asserting that their books and records reflected that only $22,791.30 was owed. Thus, Avaya asserts that only that amount should be included in the sanction judgment, rather than $200,000.

The Trustee responds that the claim of Ohio is for use taxes arising between May 1, 1997, and February 22, 2001, prior to the Closing Date of April 11, 2001. Because the use taxes are based on the Debtors' sales, the Trustee contends that the Debtors' books and records (which reflect sales during that period) should reflect that liability. Although the Debtors' schedules reflected only $22,791.30 as due, Ohio argued that the Trustee's reliance on the schedules alone was insufficient to overcome the prima facie validity of its proof of claim and that the Trustee should have produced the Debtors' tax returns and other relevant records. Those are the records which Avaya destroyed thereby making it impossible for the Trustee to contest the claim.

The Court agrees with the Trustee. The claim of Ohio is for use taxes that arose before the Closing Date and for which the Debtors would typically accrue an expense. Therefore, the Court would expect to see evidence of those taxes in the Debtors' books and records. Avaya's destruction of those books and records warrants inclusion of this claim in the amended judgment.

2. <u>Claim No. 330 by the Internal Revenue Service</u>

The Trustee seeks $12,128.33 to pay the claim of the IRS, which originally sought $31,459.73 in estimated withholding taxes. Avaya contends that the taxes were not assessed until June 4, 2001, and therefore could not have been reflected on the Debtors' books and records as of the April 11, 2001, Closing Date. Further Avaya asserts that the claim is an estimate only.

The Trustee responds that the IRS claim was for withholding taxes for the periods ending December 31, 1998, and December 31, 2000. In negotiations, the Trustee was able to get the IRS to waive the taxes for the earlier period. The claim for the latter period, although assessed after the Closing Date, was for a period prior to the Closing Date. The Trustee further argues that the claim, which is for withholding taxes, is clearly the type of claim that should be reflected on the Debtors' payroll and tax records which were destroyed by Avaya. The amount is estimated because the IRS asserted that the Debtors did not file

a tax return.  Again, the Trustee contends that any tax returns prepared by the Debtors would have been in the books and records destroyed by Avaya.

The Court agrees with the Trustee.  The IRS claim is for withholding taxes that arose before the Closing Date and for which the Debtors would typically accrue an expense.  Therefore, the Court would expect to see evidence of those taxes in the Debtors' books and records.  Avaya's destruction of those books and records warrants inclusion of this claim in the amended judgment.

### 3. Claim No. 333 by Illinois

The Trustee seeks $599.41 to pay the claim of Illinois Employment Security, which originally sought $443.78 in estimated unemployment taxes.  Avaya objects to this claim because it is based on an estimate of liability due to the failure of one of the Debtor subsidiaries (Acuity Corporation) to file a tax return.  Avaya asserts that, consequently, it could not have been reflected on Quintus' books and records as of the Closing Date.

The Trustee responds that Avaya assumed the liabilities of all the Debtors, not just Quintus.  In fact, the Aged Payables Ledger, which Avaya asserts is the extent of the liability that it assumed, includes the accounts payable ledger of Acuity

Corporation. Further, the Trustee notes that the Illinois claim is for unemployment liabilities incurred by Acuity during the first quarter of 2000, before the Closing Date. The Trustee contends that this type of liability is the type that the Debtors would normally have accrued on their books and records.

The Court agrees with the Trustee. The claim of Illinois is for unemployment taxes that arose before the Closing Date and for which the Debtors would typically accrue an expense. Therefore, the Court would expect to see evidence of those obligations in the Debtors' books and records. Avaya's destruction of those books and records warrants inclusion of this claim in the amended judgment.

### 4. Claim No. 349 by Travis County

The Trustee seeks $18,229.16 to pay the claim of Travis County for ad valorem taxes. Avaya objects to this claim because the delinquent tax statement issued by Travis County to support its claim is dated August 9, 2002. Therefore, Avaya contends that it could not have been reflected on the Debtors' books and records as of the Closing Date of April 11, 2001.

The Trustee responds that the Travis County claim was originally for $25,225.37 but was reduced as a result of negotiations. The claim is for ad valorem taxes for the year

2001 with respect to real estate leased by the Debtors. Under the APA, Avaya assumed the real estate lease. Consequently, the Trustee contends that pursuant to section 365 of the Bankruptcy Code and the terms of the APA, Avaya was responsible for all obligations arising under the lease, including the Travis County taxes.

The Court agrees with the Trustee. The claim of Travis County is for ad valorem taxes relating to a real estate lease that was assumed by Avaya under the APA. Therefore, pursuant to section 365 of the Bankruptcy Code and the terms of the APA, Avaya was responsible for all obligations arising under the lease, including the Travis County taxes. This claim should be included in the amended judgment.

     5.   <u>Claim Nos. 355 and 356 by Massachusetts</u>

The Trustee seeks $3,088.95 and $13,799.35 to pay the claims of the Massachusetts Department of Revenue for withholding taxes. Avaya objects to these claims because a part of them were not assessed until after the Closing Date, and, therefore, could not have been reflected on the Debtors' books and records as of that date.

The Trustee responds that all of the tax liabilities asserted in the Massachusetts claim are for periods before the

Closing Date. Because they are for withholding taxes, the Trustee asserts that they are the type of liabilities that the Debtors typically would have reflected on their payroll and tax records which were destroyed by Avaya.

The Court agrees with the Trustee. The Massachusetts claim is for withholding taxes that arose before the Closing Date and for which the Debtors would typically accrue an expense. Therefore, the Court would expect to see evidence of those taxes in the Debtors' books and records. Avaya's destruction of those books and records warrants inclusion of this claim in the amended judgment.

### 6. Claim No. 371 by AMEX

The Trustee seeks $27,878.48 to pay the claim of AMEX Travel Related Services for charges incurred by several employees on various dates plus interest. Avaya objects to this claim because there is no evidence that any of the charges were presented to the Debtors for payment before the Closing Date.

The Trustee responds that the proof of claim attachments evidence that all the charges were incurred by employees of the Debtors before the Closing Date. Further, the Trustee notes that under section 1.03 of the APA, Avaya assumed all obligations of the Debtors except for Excluded Liabilities. The Debtors'

obligation to reimburse employees for business expenses was not among the Excluded Liabilities. The Trustee argues that such business expenses are the type that the Debtors would normally reflect in their books and records. Consequently, the Trustee contends that Avaya did assume that obligation which is reflected in the AMEX proof of claim.

The Court agrees with the Trustee. The AMEX claim is for employee obligations that Avaya assumed under the APA. The Debtors' obligation to reimburse employees for business expenses would normally be reflected in their books and records. Avaya's destruction of those books and records warrants inclusion of this claim in the amended judgment.

IV. CONCLUSION

For the foregoing reasons, the Court will enter an amended judgment in favor of the Trustee in the amount of $1,535,979.57.

An appropriate Order is attached.

Dated: June 9, 2008						BY THE COURT:

												Mary F. Walrath
												United States Bankruptcy Judge